952 F.2d 380
 21 Fed.R.Serv.3d 1329
 MIKE OUSLEY PRODUCTIONS, INC., an Alabama Corporation,
Plaintiff-Appellant,
v.
WJBF-TV and Art Cabot, Defendants,
Ric Hogan, Defendant-Appellee,
Peagasus Broadcasting of Augusta, Georgia, Inc., and Augusta
Recreational Enterprises, Inc., Defendants.
 No. 90-8496.
 United States Court of Appeals,
Eleventh Circuit.
 Jan. 30, 1992.
 
 Gary D. Hooper, Birmingham, Ala., for plaintiff-appellant.
 David E. Hudson, Hull, Towill, Norman & Barrett, Augusta, Ga., for Peagasus.
 Richard R. Mehrhof, Allgood, Childs, Mehrhof & Millians, Augusta, Ga., for Ric Hogan.
 Appeal from the United States District Court for the Southern District of Georgia.
 Before EDMONDSON, Circuit Judge, JOHNSON* and SMITH**, Senior Circuit Judges.
 JOHNSON, Senior Circuit Judge:
 
 
 1
 Plaintiff Mike Ousley Productions appeals the district court's award of Rule 11 sanctions to defendant Ric Hogan against plaintiff's attorney, Gary Hooper. We affirm.
 
 I. STATEMENT OF THE CASE
 
 2
 In August 1987, Hooper filed a complaint in federal district court on behalf of his client, Mike Ousley Productions, alleging that the defendants had breached an oral contract and interfered with plaintiff's business and contractual relationships. Ric Hogan was among the named defendants. With regard to Ric Hogan, the original complaint alleged the following events. First, plaintiff negotiated an oral contract for the sale of plaintiff's television production, "Augusta Rocks," to WJBF-TV. Then, during the negotiations with WJBF, plaintiff visited a nightclub called "Bentley's," allegedly owned by Ric and David Hogan, and proposed to someone there that "Augusta Rocks" be videotaped at Bentley's. Finally, the complaint alleged that Ric and David Hogan maliciously induced WJBF to breach its oral contract of sale with plaintiff so that the Hogans and WJBF could produce a television show similar to plaintiff's without compensating plaintiff.
 
 
 3
 In his answer of December 1987 and all of his three amended answers, Ric Hogan asserted a counterclaim based on Yost v. Torok, 256 Ga. 92, 344 S.E.2d 414 (1986) (defining Georgia tort with elements similar to those of Fed.R.Civ.P. 11), which alleged that plaintiff's complaint was frivolous and designed to embarrass Ric Hogan. On May 2, 1988, Ousley moved to dismiss Ric Hogan, and eight days later the district court granted the motion. On June 21, 1989, the district court dismissed Ric Hogan's Yost counterclaim, as not cognizable in federal court, with leave to file motions under Fed.R.Civ.P. 11 ("Rule 11"). Accordingly, Ric Hogan moved for Rule 11 sanctions on June 29, 1989, claiming, inter alia, that the allegations concerning Ric Hogan in the complaint lacked a reasonable factual basis and that Hooper had failed to conduct a reasonable investigation into the facts of the case against Ric Hogan.
 
 
 4
 On January 30, 1990, the jury returned a verdict for the remaining defendants. While the jury was deliberating, the district court convened a hearing on the Rule 11 motion that was completed after the jury returned its verdict. During the hearing, both Ric Hogan and Mike Ousley testified. At the close of the hearing, the district court judge said he would soon dispose of the Rule 11 motion, but he kept the record open for ten days to allow the parties to file additional briefs on the matter. On February 26, 1990, the district court ordered Rule 11 sanctions against Hooper in the amount of $4,780.69 for his failure to conduct a reasonable inquiry prior to naming Ric Hogan as a defendant. 130 F.R.D. 155. This timely appeal followed.
 
 II. ANALYSIS
 
 5
 On appeal, Hooper contends that the district court erred in awarding Rule 11 sanctions on the merits, that the district court violated his due process right to notice of the Rule 11 hearing, and that the amount of the sanctions is excessive. Hogan denies all of Hooper's contentions and urges this Court to impose additional sanctions against Hooper under Fed.R.App.P. 38 ("Rule 38") for pursuing a frivolous appeal.
 
 A. Award of Sanctions under Rule 11
 
 6
 Hooper argues that the district court erred in holding that he failed to conduct a reasonable inquiry into the facts.[1] Rule 11 provides, in pertinent part, that "[t]he signature of an attorney constitutes a certificate by the signer that ... to the best of the signer's knowledge, information, and belief formed after reasonable inquiry, it is well grounded in fact. [Upon finding a] violation of this rule, the court ... shall impose upon the person who signed it ... an appropriate sanction which may include ... reasonable expenses incurred because of the filing of [the violative document], including a reasonable attorney's fee." Fed.R.Civ.P. 11.
 
 
 7
 Rule 11 " 'stresses the need for some prefiling inquiry....' " Donaldson v. Clark, 819 F.2d 1551, 1555 (11th Cir.1987) (en banc) (quoting advisory committee's note). The reasonableness of the inquiry " 'may depend on such factors as how much time for investigation was available to the signer[;] whether he had to rely on a client for information as to the facts underlying the [violative document]; ... or whether he depended on forwarding counsel or another member of the bar.' " Id. at 1556 (quoting Fed.R.Civ.P. 11 advisory committee's note). Finally, imposition of the sanction on the attorney rather than the client is sometimes proper "since it may well be more appropriate than a sanction that penalizes the parties for the offenses of their counsel." Id. at 1557 n. 6.
 
 
 8
 In the case at bar, it appears that Hooper named Ric Hogan as a defendant relying solely on hearsay furnished by his client. On June 24, 1988, Hooper filed an affidavit which stated that Ric Hogan was named as a defendant based only on information furnished by Mike Ousley, but the affidavit failed to disclose the content of Ousley's information. At the Rule 11 hearing, however, the information upon which Hooper named Ric Hogan was apparently revealed. Ousley testified at the hearing that, before the original complaint was filed in this case, he learned from two different people that Ric Hogan had some connection with Bentley's. First, a man named Tommy Tomkins told him that Ric and David Hogan owned Bentley's. Second, Tommy Price, who was apparently a former police officer and a security guard for Bentley's at the time of his conversation with Ousley, confirmed that Ric and David Hogan owned Bentley's, and added that, although David ran "the place" and "the day to day operations," Ric "called the shots regarding the television program." The record reflects, however, that Ousley had testified earlier, at his deposition, approximately seven months after the complaint was filed, that he had no personal knowledge of Ric Hogan's involvement, if any, in the alleged wrongdoing.[2]
 
 
 9
 Ric Hogan maintained from the very onset of this litigation that he was not involved in the underlying controversy. In October 1987, he filed an affidavit to the effect that he had no connection to the case and, in December 1987,[3] he asserted a Yost counterclaim, which later became a Rule 11 motion. Despite Ric Hogan's continued protestations, Hooper never offered any evidence of any inquiry on his part regarding Ric Hogan's involvement. Indeed, Hooper never deposed Ric Hogan, and, at the depositions of two other defendants, he failed to ask about Ric Hogan's role in the matter.
 
 
 10
 Furthermore, the record contains no evidence of the legitimate excuses for failure to conduct a reasonable inquiry that were recognized in Donaldson. Id. at 1556. Hooper does not claim that he lacked the time to investigate the facts; he was not forced to rely solely on his client, because he could have contacted the two men from whom his client claimed to have received information; and he did not depend on another lawyer. Id.
 
 
 11
 Therefore, we hold that the district court did not abuse its discretion in ordering that Hooper be sanctioned. See Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 110 S.Ct. 2447, 2461, 110 L.Ed.2d 359 (1990) ("an appellate court should apply an abuse of discretion standard in reviewing all aspects of a district court's Rule 11 determination.").
 
 
 12
 B. Due Process Right to Notice of Rule 11 Hearing
 
 
 13
 Hooper argues that his due process rights were violated in that he received inadequate notice of the hearing on the Rule 11 motion. The record reflects, however, that this contention is without merit.
 
 
 14
 There are only "three types of conduct [that] warrant Rule 11 sanctions: (1) when a party files a pleading that has no reasonable factual basis; (2) when a party files a pleading that is based on a legal theory that has no reasonable chance of success and that cannot be advanced as a reasonable argument to change existing law; and (3) when the party files a pleading in bad faith for an improper purpose." Pelletier, 921 F.2d at 1514.
 
 
 15
 This case fits within the first category of conduct subject to Rule 11 sanctions. With regard to the first category of cases, this Court noted in Donaldson that "Rule 11 alone should constitute sufficient notice of the attorney's responsibilities since the rule explicitly requires the attorney to certify that a complaint is well grounded in fact." 819 F.2d at 1560. Indeed, while relying on the language just quoted, this Court later stated that "[i]f the district court, therefore, properly found that the appellants' claims lacked any factual basis, then it had no obligation to afford the appellants the procedural safeguards of notice and an opportunity to be heard." Davis v. Carl, 906 F.2d 533, 535-36 (11th Cir.1990). Because there is no dispute that the allegations against Ric Hogan in the complaint lacked any factual basis, we find no plain error.[4]
 
 C. Amount of Rule 11 Sanctions
 
 16
 This Court noted in Donaldson that "[a]lthough the sanctions most commonly imposed are costs and attorney's fees, the selection of the type of sanction to be imposed lies within the district court's sound exercise of discretion.... The imposition of a monetary sanction is a particularly reasonable use of a court's discretion. Donaldson, 819 F.2d at 1557, 1557 n. 6 (citations omitted). Furthermore, Rule 11 clearly provides for sanctions against attorneys. Fed.R.Civ.P. 11 ("shall impose upon the person who signed it ... an appropriate sanction"). The district court's imposition of attorney's fees and expenses on Hooper was well within its discretion because it was Hooper, not his client, who breached the duty of reasonable inquiry.
 
 
 17
 Hooper argues, however, that the sanctions awarded to Ric Hogan were excessive because they included the cost of pursuing the Rule 11 motion. This Court has clearly held that a party can collect the expense of pursuing a Rule 11 claim. Pelletier, 921 F.2d at 1522. At the hearing, Ric Hogan's counsel produced documentation that Ric Hogan had incurred an obligation to pay $4,780.69 for attorney's fees and expenses in the defense of the suit against him by Mike Ousley Productions, in pursuing the Yost counterclaim, and in pursuing the Rule 11 sanctions. Ric Hogan's attorney billed his time at the hourly rate of $65.00. We find that the district court acted well within its discretion when it found that the bill represented only Ric Hogan's justifiable costs of defense and of the prosecution of the Rule 11 motion.[5] See Cooter & Gell, 110 S.Ct. at 2461. Therefore, we hold that the district court did not err in setting the amount of the sanctions.[6]
 
 III. CONCLUSION
 
 18
 For the foregoing reasons, we AFFIRM the district court's order imposing Rule 11 sanctions on Hooper, but refuse to impose Rule 38 sanctions against Hooper.
 
 
 
 *
 See Rule 34-2(b) Rules of the U.S. Court of Appeals for the Eleventh Circuit
 
 
 **
 Honorable Edward S. Smith, Senior U.S. Circuit Judge for the Federal Circuit, sitting by designation
 
 
 [1]
 There is no dispute that Hooper lacked a reasonable factual basis upon which to name Ric Hogan as a defendant. Therefore, Rule 11 sanctions are warranted if Hooper failed to conduct a reasonable inquiry. See Pelletier v. Zweifel, 921 F.2d 1465, 1514 n. 88 (11th Cir.1991) (Rule 11 sanctions appropriate where pleading lacked reasonable factual basis and attorney failed to conduct reasonable inquiry)
 
 
 [2]
 In the deposition of Mike Ousley, plaintiff's agent, taken on March 25, 1988, the following series of questions and answers occurred:
 Q. ... What knowledge do you have of any dealings Rick [sic] Hogan has ever had with [WJBF]?
 A. None whatsoever.
 Q. Do you have any evidence whatsoever that Rick [sic] Hogan had any involvement in any of the negotiations or contacts or communications that took place between anybody involved in this case?
 A. No, sir.
 On the same day, Hooper deposed two defendants, yet failed to inquire of either of them whether Ric Hogan was involved.
 
 
 [3]
 Also in December 1987, Ric Hogan filed a "Rule 1.6 Certificate" which disclosed that the true owner of Bentley's was Augusta Recreational Enterprises, Inc., i.e., Ric and David Hogan did not own Bentley's. The Rule 1.6 Certificate should have put Hooper on notice that the information received from his client was possibly in error and that he had a duty to inquire further as to Ric Hogan's role in the matter
 
 
 [4]
 Because Hooper failed to raise the notice issue at the district court level, we review for plain error. United States v. Southern Fabricating Co., 764 F.2d 780, 781-82 (11th Cir.1985)
 
 
 [5]
 Indeed, the district court did not impose sanctions for the fees incurred for the Rule 11 hearing and the post-hearing brief
 
 
 [6]
 We deny Ric Hogan's request to impose Rule 38 sanctions on Hooper. Cf. Burlington Northern R.R. v. Woods, 480 U.S. 1, 8, 107 S.Ct. 967, 971, 94 L.Ed.2d 1 (1987); U.S. v. A Single Family Residence and Real Property Located at 900 Rio Vista Blvd., Fort Lauderdale, 803 F.2d 625, 632 (11th Cir.1986)